UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY PISKURA, et al,

          Plaintiffs

      v.                               Case No. 1:10-cv-248-HJW

TASER INTERNATIONAL, INC., et al,

          Defendants

## ORDER

Pending are the "Motion to Exclude Dr. Zipes' Expert Testimony" (doc. no. 105) and the "Motion for Summary Judgment" (doc. no. 84) by defendant Taser International, Inc. ("TASER"). Plaintiffs oppose both motions. TASER has filed "Proposed Findings of Fact and Conclusions of Law," which plaintiffs have highlighted as true, false, or irrelevant (doc. no. 142). The Magistrate Judge held a hearing at which respective counsel presented oral arguments (doc. no. 140, Transcript). The Magistrate Judge then issued a combined "Order and Report and Recommendation" (doc. no. 148), which denied exclusion of the testimony of plaintiff's expert, Dr. Douglas Zipes, and recommended partial summary judgment.[1] TASER filed "Objections" (doc. no. 149, 157), and plaintiffs have responded.

---

[1] Additionally, the Magistrate Judge 1) granted permission for plaintiffs to file their high-lighted version of the proposed findings, and 2) granted permission for TASER to file supplemental authority (doc. no. 148 at 12-13, 39).

Upon *de novo* review of the record, and having fully considered the record, including the parties' briefs, exhibits, hearing transcript, and applicable authority, and in light of the objections, the Court agrees with the Magistrate Judge. Therefore, the Court will <u>overrule</u> the objections and <u>affirm</u> the "Order and Report and Recommendation" for the following reasons:

## I. Background and Procedural History

This case arises from the death of Kevin Piskura ("Piskura") due to cardiac arrest in April of 2008. His death occurred five days after an incident in which he was allegedly "tased" in the chest by police officers. Piskura had been involved in an altercation in a bar, was removed by bouncers, and police officers had responded to the scene. Piskura was extremely intoxicated at the time. The parties do not dispute that police discharged the TASER Model X26 electrical control device ("ECD") at Piskura from close range, but dispute whether "delivery" of the device's electric charge actually occurred. TASER contends that Piskura died from the effects of acute alcohol intoxication, rather than the ECD. The undisputed facts have been set forth by the Magistrate Judge (doc. no. 148 at 2-3) and are incorporated herein.

On April 19, 2010, the decedent's parents, Mary and Charles Piskura ("plaintiffs"), filed a federal complaint against multiple defendants, including TASER, the City of Oxford, the Oxford Police Department, individual police officers, and numerous "John Does" (doc. no. 1). Mary Piskura, as fiduciary of the estate of Kevin Piskura, asserted claims for violation of 42 U.S.C. § 1983 (Count I), "wrongful death/statutory product liability" (Count II), "wrongful death/common

law negligence/product liability" (Count III), "wrongful death/intentional and negligent concealment and misrepresentation" (Count IV), "wrongful death, reckless, willful and wanton misconduct" (Count V), and survivorship (Count VI). Mary and Charles Piskura, individually and as next of kin, also asserted a claim for loss of consortium.

The "Oxford defendants" were voluntarily dismissed upon a February 12, 2012 "Stipulation of Dismissal" (doc. no. 75).

After discovery, the remaining defendant TASER filed the present motion for summary judgment on all claims against it (doc. no. 84). TASER filed related briefs and exhibits (doc. nos. 85-94, 103) and proposed findings (doc. no. 104). TASER also filed motions to exclude the testimony of plaintiffs' expert witnesses (doc. nos. 95-102, 105-106). The motion pertaining to the expert witness Dr. Douglas Zipes (doc. no. 105) is at issue here.[2]  Plaintiffs filed briefs in opposition (doc. nos. 123, 124), and numerous exhibits and excerpts of depositions (doc. nos. 111-122). In light of the voluminous exhibits and briefing on both sides, the parties were granted several extensions of time. Defendants filed replies, additional exhibits, and supplemental authority (doc. nos. 135, 137, 138, 145, 147).

After a hearing, the Magistrate Judge entered an "Order and Report and Recommendation" (doc. no. 148). TASER filed objections to the Magistrate Judge's "Order" denying TASER's motion to exclude Dr. Zipes' testimony (doc. no. 157). TASER also filed objections to the "Report and Recommendation" to the

---

2  As indicated at the hearing, TASER's three other motions to exclude expert testimony are not essential to this court's resolution of the summary judgment motion.

extent it denied summary judgment on Count II (failure to warn), Count VI (survivorship), and as to punitive damages (doc. no. 149). These matters have been exhaustively briefed and are ripe for consideration.

The Court notes that TASER does not object to the Magistrate Judge's recommendation to grant summary judgment to TASER: 1) on the common law claims of products liability, negligence, and misrepresentation because such claims are preempted by the Ohio Product Liability Act ("OPLA"); and 2) on the design and manufacturing claims because plaintiffs concede that they have no evidence that the device was designed or manufactured improperly (doc. no. 149 at 4; see also, doc. no. 140 at 53, Hrg. Tr.). The main remaining claim ("failure to warn") concerns the sufficiency of the warnings issued by TASER with respect to discharging an "X26 ECD" device at a suspect's chest.

## II. The Defendant's Objections (doc. no. 157) to the Magistrate Judge's Order Denying Exclusion of Dr. Zipes' Testimony

Initially, the Court observes that TASER has argued that the Magistrate Judge made a "recommendation" regarding Dr. Zipe's testimony (doc. no. 157 at 2-3). The Magistrate Judge, pursuant to her authority regarding pretrial matters, held a hearing and appropriately ruled on this motion by underline order (doc. nos. 26 and 36, referring "all nondispositive pretrial motions"). TASER has not shown that the Magistrate Judge's "Order" is "clearly erroneous" or contrary to law. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). In any event, the Court has conducted full

de novo review of the record and agrees with the Magistrate Judge that exclusion of Dr. Zipes' expert testimony is not warranted.

The Magistrate Judge correctly cited and discussed the relevant *Daubert* standard, Rule 702 of the Federal Rules of Evidence, and other relevant case law (doc. no. 148 at 4). Rule 702 permits testimony based on "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. Fed.R.Evid. 702. The Magistrate Judge correctly discussed and applied the law in her analysis of the "reliability" and "relevance" of the expert testimony. With respect to Dr. Zipes' methodology, the Magistrate Judge indicated that "Dr. Zipes has sufficiently explained the bases for his opinions and distinguished contradictory studies, some of which were funded by TASER" (doc. no. 148 at 9). After a thoughtful analysis, the Magistrate Judge concluded that Dr. Zipes, a preeminent scholar in the field of electrophysiology (a subspecialty of cardiology that "focuses on the electrical impulses that regulate heart rhythm") had the necessary training, knowledge, experience, and education to assist the trier of fact in understanding the evidence and in resolving the causation issue in this case, i.e. whether Piskura died of cardiac arrest as a result of being tased in the chest (doc. no. 148 at 6).

Although TASER objects that Dr. Zipes is not an expert in "external stimulation" of the human body by ECDs and points to various studies that contradict his opinion, TASER's objection to the admission of Dr. Zipes' testimony relates more to the weight the jury should give his opinion than to its admissibility.

TASER will have full opportunity to cross-examine Dr. Zipes at trial.

In her Order, the Magistrate Judge aptly noted that other courts faced with very similar arguments have held that Dr. Zipes is qualified to testify as an expert witness on such matters. See, e.g., Rich v. Taser Int'l, 2012 WL1080281, *6-7 (D. Nev.) ("the Court is not convinced that the number of studies going against Dr. Zipes' opinion, many of them performed by individuals associated with TASER, mandates that his testimony be excluded"); Fontenot v. TASER Int'l, 2011 WL 2535016 (W.D.N.C. 2011) (denying motion to exclude the expert testimony of Dr. Zipes and observing that Dr. Zipes' conclusion that the electric charge from the TASER X26 ECD " 'can cause cardiac arrest by capturing the cardiac rhythm at very rapid rates, and precipitating ventricular tachycardia or ventricular fibrillation' is clearly relevant and will assist the trier of fact in understanding a central fact at issue in this particular case").

For all these reasons, the Court agrees with the Magistrate Judge and will affirm her order.

### III. The Defendant's Partial Objection (doc. no. 149) to the Magistrate Judge's Recommendations as to Summary Judgment

Next, TASER objects that the Magistrate Judge should have recommended summary judgment on the survivorship claim (Count VI) and the "failure to warn" claim (Count II). As plaintiffs' complaint seeks punitive damages on both claims, TASER also objects that "the punitive damages claim fails as a matter of law as there is no clear and convincing evidence of flagrant disregard for safety" (doc. no. 149 at 6).

A "Report and Recommendation" that is dispositive of a party's claim or defense shall be subject to *de novo* review by the district court in light of specific objections filed by any party. See Fed. R. Civ. P. 72(b); <u>Vogel v. U. S. Office Prods. Co.</u>, 258 F.3d 509, 515 (6th Cir. 2001).

A. The Survivorship Claim

In its motion for summary judgment, TASER argued that the plaintiffs' survivorship claim may not proceed because Ohio's Product Liability Act ("OPLA") "abrogated" such claim. The Magistrate Judge recommended denying summary judgment on this claim, and TASER now objects (doc. no. 149 at 5). TASER argues that plaintiffs had offered "only two sentences and no citations" to authority regarding the survivorship claim and further argues that the Magistrate Judge provided only "minimal discussion" of this claim in the Report and Recommendation. TASER suggests that this claim was essentially "overlooked" by the Magistrate Judge.

On the contrary, the Magistrate Judge did not "overlook" such claim. She expressly considered it (doc. no. 148 at 30, indicating that "TASER asserts that plaintiffs' survivorship claim, Count VI, must be dismissed as it is derivative of the abrogated stated law claims and similarly preempted"). The Magistrate Judge discussed the relevant law and the parties' arguments, and explained that "recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, *other than a product liability claim*," is not preempted by the OPLA." (<u>Id</u>. at 30-32, italic in original, citing Ohio R.C. § 2307.72(C) (West 2007)).

As the Magistrate Judge pointed out, OPLA was enacted in 1988 and was subsequently amended to clarify that sections 2307.71 to 2307.80 "are intended to abrogate all common law product liability claims or causes of action." Ohio R.C. § 2307.71(B). The amendment was effective on April 7, 2005, and applies to the present case. Survivorship is a claim that is derivative of the principal claims in a complaint, see Glassner v. R.J. Reynolds Tobacco Co., 1999 WL 33591006 (N.D.Ohio 1999), and is not itself a "common law product liability claim" that would be pre-empted by OPLA. A "survivorship claim" is an action to recover damages following the injured party's death. Shinaver v. Szymanski, 14 Ohio St.3d 51, 55 (1984) ("Under the general survival statute, R.C. 2305.21, a victim's right of action for personal injuries survives and passes to her personal representative . . . [who] may maintain an action in the same manner in which decedent could have maintained such action if [he] had survived.").

The Magistrate Judge found that the common law claims were preempted by OPLA, but that the "failure to warn" claim pursuant to OPLA could proceed. The Magistrate Judge then quoted from Stratford v. SmithKlineBeecham Corp., 2008 WL 2491965, *3 (S.D. Ohio 2008), where the court held that "the claim for survivorship in [a] complaint remains so long as any of the underlying principal claims in the complaint remain." The Magistrate Judge correctly concluded that the plaintiffs' survivorship claim, Count IV, should not be dismissed (doc. no. 148 at 35, "as this principal claim remains so should plaintiffs' claim for survivorship"). Five pages of analysis by the Magistrate Judge can hardly be characterized as "minimal discussion."

In its objection, TASER relies on a federal case where the district court dismissed all the common law claims and the survivorship claim under the amended version of OPLA. See <u>Deacon v. Apotex, Corp.</u>, 2008 WL 2844652, * (S.D.Ohio 2008) (J. Rice) (holding that plaintiff's "claims under Ohio common law are dismissed as abrogated by Ohio Rev.Code § 2307.71(B)"). TASER incorrectly asserts that the Magistrate Judge did not cite the <u>Deacon</u> decision (doc. no. 162 at 3). The Magistrate Judge did in fact note that this case was distinguishable (doc. no. 148 at 34, fn. 19).

In response to the objection, the plaintiffs point out that the complaint in <u>Deacon</u> pleaded <u>only</u> pre-empted common law claims and did not plead an OPLA claim (doc. no. 158 at 5). Since no claims remained, the survivorship claim was also dismissed. Thus, TASER's reliance on <u>Deacon</u> is misplaced. Plaintiffs point to <u>Stratford</u>, 2008 WL 2491965 at *3, which is more relevant to the present case. The Magistrate Judge discussed and relied on such case. In <u>Stratford</u>, the complaint pleaded both common law and OPLA claims. The Court dismissed the common law claims, but held that the OPLA "failure to warn" claim <u>and</u> the survivorship claim could proceed, just as in the present case. <u>Id</u>.

In its reply (doc. no. 162 at 3), TASER further argues that survivorship is "not an available remedy under the Ohio wrongful death statute." See Ohio R.C. § 2125.02(B)(1)-(5) (listing available damages for wrongful death). Survivorship and wrongful death claims are different. A claim for survivorship is for the "wrong to the injured person and is confined to his personal loss and suffering before he died," whereas a claim for wrongful death is for "the wrong to the beneficiaries

and is confined to their pecuniary loss through his death." <u>Johnson v. Health Care</u> <u>& Retirement Corp</u>., 1993 WL 102492 (Ohio Ct.App. 1993) (citing <u>May Coal Co. v.</u> <u>Robinette</u>, 120 Ohio St. 110, 165 N.E. 576 (1929)); <u>Perry v. Eagle–Picher Industries,</u> <u>Inc</u>., 52 Ohio St.3d 168 (1990).

Based on its wrongful death argument, TASER argues that plaintiffs "can point to no statutory basis for a pain and suffering claim" (doc. no. 162 at 3). The plaintiffs' survivorship claim, however, is brought under Ohio R.C. § 2305.21, which provides: "In addition to the causes of action which survive at common law, causes of action for . . . injuries to the person . . . also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." TASER's objection lacks merit.

<u>B. The Failure to Warn Claim</u>

Next, TASER objects to the Magistrate Judge's recommendation to deny summary judgment on the failure to warn claim. TASER does not dispute that it has a duty to warn against reasonably foreseeable risks associated with its device (the "X26 ECD"). Instead, TASER argued in its summary judgment motion that the plaintiffs cannot establish the proximate causation element of their "failure to warn" claim brought pursuant to Ohio R.C. § 2307.76 ("OPLA"). TASER's argument is based on its assertion that plaintiff's cannot show that Piskura received an electrical shock (i.e. a completed electrical circuit) from the ECD device (doc. no. 150 at 4-6).

In its objections, TASER argues that the "failure to warn" claim fails as a "matter of law" on three grounds: 1) that the recommendation did not follow

binding precedent on "legally insignificant risk"; 2) did not follow binding precedent on "accepting uncontradicted video evidence"; and 3) did not accept "undisputed facts confirming that a necessary predicate for causation –– sufficiently close dart-to-heart distance –– is not of record" (doc. nos. 149 at 9; 150 at 13, 15).

First, TASER asserts that the decision in Hirsch v. CSX Transp. Inc., 656 F3d 359 (6th Cir. 2011) controls. TASER objects that the Magistrate Judge did not "follow" such binding precedent. The Hirsch case involved claims of negligence after a train wreck that allegedly exposed residents to a cancer-causing chemical ("dioxin"). The residents suffered no injuries, but brought suit based on a possible future risk of contracting cancer. On summary judgment review, the court found that the affidavit of the plaintiffs' physician was speculative and conclusory. The physician's assessment of exposure was based on a map that used unreliable data; residents were exposed to a dioxin dose that was only half of the EPA's acceptable maximum dose; and the physician offered no explanation for why he believed burdensome medical monitoring would be reasonable for a very small risk of developing cancer (estimated at less than "one in a million"). As the present plaintiffs point out, the residents in Hirsch had suffered no compensable injury (unlike Piskura), and their future risk was deemed too speculative to be actionable (doc. no. 158 at 6). The Sixth Circuit Court of Appeals affirmed summary judgment for CSX.

Citing Hirsch, TASER argues that the theory of plaintiffs' expert Dr. Zipes is "speculative" and "legally insignificant." TASER concludes that "plaintiffs offer no

evidence or response to <u>Hirsch</u>, so summary judgment should be entered for TASER" (doc. no. 149 at 10). Although couched as an objection to the denial of summary judgment, TASER is essentially rehashing prior arguments and re-stating its objection to Dr. Zipes' expert testimony. Plaintiffs point out that TASER is attempting to use the <u>Hirsch</u> case to exclude Dr. Zipes (doc. no. 158 at 9). The Court has already discussed the Magistrate Judge's Order regarding Dr. Zipes' expert testimony and need not repeat it here. The Court emphasizes that TASER's objection to Dr. Zipes' testimony relates more to the weight the jury should give his opinion than to its admissibility. Despite TASER's urging, courts do not "weigh" conflicting evidence on summary judgment, rather, the Court's role on summary judgment review is to determine whether genuine disputes of material fact exist.

Moreover, the Magistrate Judge appropriately discussed the <u>Hirsch</u> decision. She observed the lack of supporting evidence in that case, and contrasted it with Dr. Zipe's "ample explanation about the process by which cardiac capture occurs following exposure to the ECDs" (doc. no. 148 at 25). The Magistrate Judge properly found that the <u>Hirsch</u> case was "inapposite" under the fact of the present case and did not provide a basis for granting summary judgment to TASER on the failure to warn claim. In response to TASER's objection, plaintiffs point to numerous studies and sources of information indicating that the risk of cardiac arrest due to chest deployment was more than a "mere possibility" (<u>Id</u>. at 7-10). Although TASER asserts that the Magistrate Judge did not follow binding precedent on "legally insignificant risk," the Magistrate

Judge properly applied the relevant law to the facts of this case. TASER's objection lacks merit.

Second, TASER objects that the Magistrate Judge did not follow binding precedent on "accepting uncontradicted video evidence." TASER points to Hayden v. Green, 640 F.3d 150, 152 (6th Cir. 2011) in support. In Haydn, a police video showed the actual events at issue, and thus, the police officer was entitled to qualified immunity. Id. at 152 ("Hayden says that he stopped his vehicle at that point, but the in-car video from Green's cruiser belies the claim. Instead, the video shows that Hayden's vehicle continued moving forward and then went partially up onto the curb"). TASER also cites Scott v. Harris, 550 U.S. 372, 380 (2007), which merely stands for the unremarkable proposition that a district court need not view the alleged facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." TASER then argues that the "undisputed" video evidence "confirms" that no ECD probes were on Piskura's chest (doc. no. 150 at 15). TASER asserts that it is therefore entitled to summary judgment on the failure to warn claim. TASER's argument is largely conclusory and amounts to a disagreement as to legal implications of certain facts. See Beard v. Banks, 548 U.S. 521, 529 30 (2006). TASER also overstates its case.

Plaintiffs point out that TASER relies on a "grainy, low-resolution" video segment of approximately 11 seconds, which is only a small portion of the entire incident. The Magistrate Judge thoroughly discussed the evidence, including that Officer Jones, a police officer at the scene, had indicated that he observed wires

extending from Officer Robinson's TASER X26 ECD to the front of Piskura's chest (doc. no. 148 at 17). In the police incident report, Officer Jones indicated that he had observed that "the taser probes were stuck in the suspect's chest area." Other evidence indicated that Piskura had puncture wounds ("probe marks" from the ECD) in his chest. The Magistrate Judge appropriately concluded that the evidence established genuine disputes of material fact as to whether the ECD probes had made sufficient contact with Piskura to complete an electrical circuit. The Magistrate Judge therefore recommended denial of summary judgment on this claim (doc. no. 148 at 18).

Contrary to TASER's assertion that the Magistrate Judge "did not follow binding precedent on accepting uncontradicted video evidence," the Magistrate Judge properly applied the relevant law to the facts of this case. The Court agrees that the record reflects genuine disputes of material fact that preclude summary judgment. TASER's objection lacks merit.

Third, TASER argues that Dr. Zipes "cannot say to a reasonable degree of certainty that a second probe even connected with Piskura to create a complete circuit or that a probe penetrated the epidermis" and that "even for the one probe he observed from autopsy photographs, [Dr.] Zipes agrees that this spot was 'considerably farther than two centimeters from the right ventricle of the heart' " (doc. nos. 149 at 12; 162 at 7).

The Magistrate Judge recommended that plaintiffs had identified sufficient evidence to demonstrate the existence of a triable issue as to whether the ECD probes made sufficient contact with Piskura to complete an electrical circuit (doc.

no. 148 at 17-18). For instance, the Magistrate Judge indicated that the eyewitness testimony of the police officers at the scene indicated that the ECD device was deployed at close range, that the "taser probes were stuck in the suspect's chest area," and that Piskura dropped to the grounds immediately upon being "tased." (Id.). The treatment notes of Dr. Steven Horn, M.D., the emergency room physician who attended to Piskura after the incident, indicate that he observed "two puncture wounds over Piskura's lower left sternum," which the physician attributed to the "Taser barbs." Piskura's father, a former police officer, also testified at deposition that he had observed these two puncture wounds on his son's chest.

As to the evidence about the number of chest puncture wounds ("probe marks"), the Magistrate Judge observed that the circumstantial evidence indicated that incisions from organ harvesting may have obliterated the second mark (doc. no. 148 at 19). The Magistrate Judge also pointed out that, according to the TASER training manual, Piskura could have received the completed charge through layers of clothing. According to Dr. Zipes, the second taser probe could also have been "against the skin," thereby allowing completion of the electrical circuit without a puncture wound. TASER argues that there was "only one" probe mark and concludes that "the autopsy and other forensic evidence confirm that the ECD did not complete an electrical circuit" (doc. no. 150 at 5), Contrary to TASER's contention, the Magistrate Judge appropriately recommended that the absence of a second mark was not dispositive.

The Magistrate Judge also addressed TASER's further argument that "to

induce cardiac capture, the dart-to-heart distances must be less than two centimeters" (doc. no. 148 at 21). For its argument, TASER relied on testimony that was referring to research conducted on pigs. Although TASER had alleged that the "dart-to heart" distance was purportedly "admitted" by Dr. Zipes, the Magistrate Judge observed that the pages cited by TASER did not reference "dart-to-heart" distance in humans. The Magistrate Judge pointed out that TASER's argument was premised on the one probe mark visible in the autopsy photographs, whereas other evidence suggested that there had been two probe marks on Piskura's chest (Id. at 23). Dr. Ugwu, the medical examiner who conducted the autopsy, had noted that one probe mark was over the right ventricle. Dr. Zipes indicated at deposition that, based on the autopsy photographs, it was "probably" farther than two centimeters from it. The Magistrate Judge appropriately indicated that this comment alone was "too tenuous" to conclude that no genuine issue remains with respect to whether the taser probes were sufficient[ly] close enough to Piskura's heart to induce cardiac capture" (Id. at 23). After reviewing Dr. Zipes' deposition testimony, the Magistrate Judge appropriately indicated that TASER has over-stated the conclusiveness of the evidence regarding its "dart-to-heart" argument. (Id.). In its objection, TASER essentially just repeats its prior arguments made to the Magistrate Judge.

Viewing the evidence in the light most favorable to plaintiff as non-moving party, the Court agrees with the Magistrate Judge's recommendation that the evidence is sufficient to submit the case to the jury on the failure to warn claim. Genuine disputes of material fact exist, and summary judgment was properly

denied on this claim.

C. Punitive Damages

Finally, TASER objects that the Magistrate Judge should have recommended "dismissal" of any claim for punitive damages because "there is no clear and convincing evidence of flagrant disregard for safety."

In its summary judgment brief, TASER argued that "punitive damages cannot be awarded since TASER's actions do not 'demonstrate malice or aggravated or egregious fraud' " (doc. no. 103 at 23, quoting from Ohio R.C. § 2315.21(C)(1)). TASER pointed to the warnings issued for its ECD products, ongoing efforts to provide continuous updates, and numerous scientific findings regarding the safe use of ECDs.

The Magistrate Judge pointed out in the Report and Recommendation that pursuant to OPLA, "punitive damages . . . shall not be awarded . . .  unless the claimant establishes by clear and convincing evidence, that harm for which the claimant is entitled to recover . . . was the result of misconduct . . . that manifested a flagrant disregard of the safety of persons who might be harmed by the product" (doc. no. 148 at 35-38, quoting Ohio R.C. § 2307.80(A)).

Having identified the correct law, the Magistrate Judge observed that the plaintiffs had submitted multiple sources of evidence indicating TASER's prior knowledge of the danger of using ECD devices on the chest area, i.e. that this can cause cardiac capture and/or cardiac arrest that results in death. The Magistrate Judge concluded that "the testimony and evidence cited by the parties demonstrates that there are facts in dispute with regard to whether TASER

engaged in misconduct that amounted to a flagrant disregard of the safety of individuals likely to be tased in issuing its warnings regarding the dangers of the X26 ECD" (Id. at 37).

The Magistrate Judge also indicated that, given that liability had not yet been determined by the jury with regard to the "failure to warn" claim, "it is improper to dispose of plaintiffs' punitive damages claim at this juncture" (Id. at 37-38). In other words, dismissal of a damages claim would be premature at this time.

In its objection, TASER argues that "there is no clear and convincing evidence of flagrant disregard for safety" (doc. no. 150 at 17). TASER points to various studies and complains that the Magistrate Judge did not mention a particular study ("the National Institute of Justice Report"). TASER points to a Sixth Circuit opinion where the Court of Appeals observed, based on that 2011 report, that "the vast majority of individuals subjected to a taser – 99.7% -- suffer no injury or only a mild injury" (doc. no. 149 at 6). TASER alleges in conclusory fashion that the Magistrate Judge failed to apply the "clear and convincing evidence standard."

TASER argues that the Magistrate Judge improperly relied on an Ohio appellate decision, Hertzfeld v. Hayward Pool Prods., Inc., 2007 WL 4563446 at *10 (Ohio Ct. App.), where the court did not grant summary judgment on the underlying claim or the request for punitive damages. The Hertzfeld court observed that punitive damages are "determined if and after a plaintiff has proven liability" and that it would not decide "the question of whether the issue of punitive

damages reaches a jury" at the summary judgment stage. While TASER correctly points out that such citation alone "does not dictate what this federal court must do," TASER does not address the plaintiffs' evidence that the Magistrate Judge discussed (and which was the basis for her recommendation that genuine disputes of material fact exist on the issue). TASER merely repeats its emphasis on it own evidence.

In their response to the objections, plaintiffs cite multiple cases under Ohio law for the proposition that a basis for punitive damages is shown when "a defendant displays a conscious disregard for the rights and safety of others" (doc. no. 158 at 18). Plaintiffs also point to an excerpt from the same 2011 study cited by TASER, which refers to a case "documenting VF [ventricular fibrillation] two minutes after the collapse of a teenager who was subdued with an ECD device" and which recognized that ECD use "involving the area of the chest close in front of the hear area is not totally risk-free" (Id.). Plaintiffs also refer to their own previously cited evidence, including testimony from the engineer who designed the device, in support of their contention that TASER knew about the dangers of ECD use in the chest area as early as 2005 but did not provide "meaningful" warnings of such risk until 2009.

Based on the evidence of record, the Court agrees with the Magistrate Judge's recommendations, including the recommendation that it would be premature at this time to preclude the possibility of punitive damages. Indeed, the record reflects that TASER has filed a separate "Motion to Bifurcate Punitive Damages" (doc. no. 168) which has not even been completely briefed.

Accordingly, the Court will <u>OVERRULE</u> the defendant's objections; <u>AFFIRM</u> the Magistrate Judge's "Order and Report and Recommendation" denying the defendant's motion to exclude Dr. Zipes' expert testimony and recommending partial summary judgment; <u>GRANT</u> summary judgment as to Counts III and IV (the common law claims); and <u>DENY</u> summary judgment as to Counts II (failure to warn) and VI (survivorship). Additionally, the Court will not dismiss the claim for punitive damages at this time.

IT IS SO ORDERED.

                                              <u>s/Herman J. Weber</u>
                                        Herman J. Weber, Senior Judge
                                        United States District Court